Next argument, United States v. Paxton, Ms. Bonamici May it please the Court, Deborah Bonamici Deborah Bonamici, on behalf of the United States, good morning. Your Honor, the District Court erred in determining that the defendants in this case had a reasonable expectation of privacy in conversations that they had while in police custody, after being arrested, while being transported to the police station, in a marked police vehicle, handcuffed with their hands cuffed behind them. This is a, based on all that information, there's no basis whatsoever for the defendants to believe that they were in a sanctuary for private conversations. Now of course the van, with its divided compartments, is distinct from a standard squad car. In a car, the detainee sits in view of both the driver and the electronic equipment, the radio, the computer, terminal, and so on. So in a car, that puts the detainee on notice that his words might be overheard and recorded. And here you have a dividing wall that might suggest to a detainee that he has a degree of privacy. Well, two issues, there's more, but I'll go with two. The first issue is that, in fact, a lot of police car cases involve conversations that take place when the officers are outside the car. So the presence of the officers is clearly not a dispositive factor. But secondly, the fact that there's a dividing wall and there is some distinction in this specific experience does not in any way negate the fact that the defendants are well aware that they are being held in custody by the police and that their expectation of privacy is substantially diminished. In fact, what we say is that to make that distinction is to put undue emphasis on the issue of notice. In fact, it basically puts notice above everything else and makes it a dispositive factor because all of the other factors clearly weigh against any possible reasonable expectation of privacy. And so if notice is the issue, then what we are saying is that individuals have reasonable expectations of privacy everywhere unless they are put on express notice that they do not. And that's not the law and it's never been the law and it shouldn't be the law. I mean, what has to happen here is that there has to be a subjective, which your honors know, that there has to be a subjective expectation of privacy, which we also challenge that that was the case here, but it has to be one that society is willing to recognize as reasonable. And there's no distinction between a squadron and a squad car when you are considering whether society can accept this expectation of privacy as reasonable. It's just not reasonable. It's long been held that people in police custody have diminished expectations of privacy. It's long been held that prisoners have no expectation of privacy in their jail cell and police cars have been equated with mobile jail cells and in fact they are. Police cars are and are universally known to be used for the purpose of controlling prisoners during transport and certainly there's no distinction between a squad car and a squadron or a van when considering that factor. The only real distinction between a squadron and a squad car is the one that you note, Judge Rovner, which is the visual signs of surveillance. And visual signs of surveillance. I'm sorry, I missed what you just said. Is just the what? Visual signs of surveillance. Oh, visual. Yeah. In other words, can you see that the room is bugged? But visual signs of surveillance have never been required to hold that there's no reasonable expectation of privacy in an interrogation room when officers leave the room temporarily. Visual signs of surveillance simply are not required and in reality what we have here is a case in which the evidence itself shows that the defendants did not have no expectation of surveillance. In fact, one of the defendants specifically said, this van is probably bugged. In fact, there's cameras in here, two on our side and two on your side. I mean, it's true that only one defendant made the statement. But you don't regard that as critical evidence.  No, no. But if he hadn't said that, that wouldn't change your position at all. Oh, no. No. It's just a sign of what everyone knows, which is that it's reasonable to understand that a police car is equipped with recording equipment. In fact, I think that's... But of course, the government would prefer they not know this. Well, the government... Then they'll clam up, right? So you want them to naively believe that they're not being bugged. No. No, no. That's what you want. Because if they know that or think they're being bugged, they're not going to talk. They have any sense. Let me disagree with the way that you're conveying that. Pardon? Let me disagree with the way that you're saying that. What we want is for the defendants who are being transported, not to... With respect to the surveillance, we want them to speak in a way that... We want to capture whatever it is they do say. That is not to say that we don't believe that if they can't see the equipment, they're going to think it's not there. It's likely that it won't be so obvious as to who they are. You don't care what they think. You really hope that they don't think anything. Because what you want them to do is incriminate themselves, right? Judge, this is what I think is really an unfair kind of twist of the... I'm not criticizing it. But it suggests that what we are looking to do is what the defendants have argued, which is that we are looking to obtain confessions illegally. Of course you are. Why else do you both say? Well, as we said in our brief, there are lots of statements that defendants make that aren't specifically confessions. They may be evidence of the commission of a crime, but they're also evidence of future crimes. For example, agreements, discussions about how to escape, how to destroy evidence, who to contact on the outside to hide evidence. I mean, you've seen lots of cases where that's happened, and we have too. Look, we're not communicating. You want them to talk like that so you can record it and nail them, right? Yes. Or prevent them from committing future crimes. You don't want them to be aware of the bugging and say to each other, we mustn't talk in this van, right? That's what you want. That's accurate. Of course. But it's not accurate to say that we're doing it so that we can illegally incriminate them. That's the part that... Of course it is. Okay. Why else would you record people who've just been arrested unless for hoping that they're going to provide evidence you can use against them? Well, there are other aspects of this, but they all turn into evidence eventually. For example, it may be that what we see them do is attempt to drop or hide a piece of contraband that we didn't catch in the search. I guess that's incriminating, but it also prevents contraband from going into the jail or into the police station, right? So there are kind of mutual issues here. We want them to talk. If they're going to talk about trying to get somebody to lie for them, we'd like to hear that. It's incriminating, but it also prevents an effort to obstruct justice if we're able to stop it. But that, of course, is incriminating too. Exactly. That's why I'm saying, yes, it's all incriminating, but there's another purpose. It doesn't matter. Okay. Because you want... I mean, you're not saying that there are any problems about trying to obtain incriminating information. No, no, there are not. That is perfectly legitimate. That's essential for your position. And there are no problems with doing that surreptitiously, and the case law clearly supports that that's correct. So in these circumstances, it's clear that any reasonable expectation of privacy, or there was no reasonable expectation of privacy, and there could not be one. And the specific nature of the car or the vehicle is not enough to separate this case from the unbroken line of cases holding that it was. Judge Roper? I want to take you somewhere else for a second. Why is Mr. Webster's cross-appeal not inextricably intertwined with the government's appeal in that both appeals deal with his expectation of privacy? Actually, the cross-appeal focuses... to the extent that it deals with the expectation of privacy and not the Miranda issue, the cross-appeal really focuses on whether he heard the statements of the co-defendant regarding the fact that the vehicle was likely bugged. And that is not a... I mean, that is a piece of evidence that can go in the column, but that's not really what our argument is about. What we're saying is that the court erred in finding that there was a reasonable expectation here to begin with. If we were to lose and the case would go to trial, Mr. Webster would have a chance with the other defendants who did not join his cross-appeal to raise these issues at the end of the case. The government, as you know, that's why we're allowed an interlocutory appeal, would not have that opportunity if the defendant were acquitted. So that's a distinction here that can't be overcome. Thank you. The last thing I will say, and I would like to reserve the rest of my time for rebuttal, is that the other problem here is that this is a case where the officers clearly believed in good faith that they were behaving lawfully, and they had every reason to believe that. Although this court has not held that the officers could rely on precedent outside the circuit, the existence of the precedent here in every circuit that had decided the issue over 20 years with no dissent and nothing at all to suggest that this court would dissent from that unbroken line of cases, clearly the officers acted in good faith in here, and there's no deterrent value in suppressing the evidence here. Okay. Thank you, Ms. Bonamici. Ms. Jackson? May it please the Court, we are here yet again in another Stash House case, which as this case, here this is a Fourth Amendment issue, and it makes it a difficult case, as are all Fourth Amendment cases, because we are asking this court to go back in time, despite knowing what we know now, and to honor the Fourth Amendment. Now, the defendants were placed, handcuffed, into a marked police van, essentially a mobile jail. So, why would it be reasonable for the defendants to expect that they had any greater expectation of privacy than they would have had sitting on a bench in a police station or in a jail? One factual issue here, it was a marked Chicago police van, the arrest the record shows was at night. They were taken from a warehouse at night, put into this van, so there's no evidence in the record that the defendants were able to see the outside of the van and know it was a marked Chicago police van. I don't think that's particularly important to answer the substance of your question, Judge. Even if you analogize, and courts have analogized, a police car, not a van, but at least a police car, to a mobile jail cell, the Supreme Court has told us that privacy rights don't stop altogether at the jail cell door. We know that from Marilyn v. King, 2013, any given search is not acceptable just because someone's in police custody. Or Hudson v. Palmer in 84, prisons are not beyond the reach of the Constitution.  The same decision Judge Gettleman made here, accepting the analogy of a mobile jail cell does not require the court to say the defendants had no reasonable expectation of privacy. You have to go further. You have to then balance. Why would the law protect people who are talking about their criminal activities? The law protects defendants in multiple situations. Arizona v. Morrow... But why would it protect them when they're plotting crimes? Then it seems to me the court is asking us to go to the essence or the substance of defendant's conversation, to go back in time and decide whether the Fourth Amendment protects them. The Fourth Amendment doesn't have anything to do with it. It certainly doesn't have an essentialist analysis like that. The Fourth Amendment asks us to balance the interests between the privacy interests. The Fourth Amendment is about searches and seizures, not about eavesdropping. What is the objection to eavesdropping on criminals who are discussing their criminal activity? If they discuss innocent matters, but the government isn't interested in that, all the government is interested in is what kind of evidence their conversations might produce. If all the government is recording or keeping is criminal conspiratorial talk, how could that be a violation of anything? To take the first part of your question, the Supreme Court case law and this circuit's case law very clearly says this recording is a search and seizure. That's why we're under this bucket of case law. That much is clear. It seems to me you're asking whether the substance ... We then look at the substance of defendant's conversation to see if they had a right to privacy. That would be taking the analysis backward instead of forward, looking at what is their objective expectation of privacy and what is their subject. I don't understand. What if they're talking in the van and they're talking about a murder they're planning if they can get bail? So they're going to kill someone who turns state's evidence on. So are you saying they have a constitutional right to conceal that conversation from the government? We're saying to capture that- Are you saying that? If you are saying that, I just can't buy that. The government had to either get consent or a warrant to capture that conversation. And if the government's interest here is finding out about those things, making sure they can hear those- Do you mean every time they put someone in a van, they have to get a warrant? Under the circumstances of this case where it was not a police squad car, the layout is different as you noted earlier- Does it make sense to have one rule for all types of police vehicles rather than having unpredictable outcomes based on the unique characteristics of each vehicle? We're asking- I mean, doesn't it make sense? We're asking for a ruling on the facts of this case. If the effect is that the rule is police need to get a warrant in any kind of vehicle other than a squad car, even that is not onerous. It's not an exception to the categorical rule that the ATF cannot deal with. But it is onerous that every time you put someone in a van or a squad car, we have to go and get a warrant? What are we talking about? It would have been not onerous at all for them to do an alternative, which is to make the cameras visible or to ask defendants for consent. That's another story. That's not onerous either. So- Well, you think it's all right if they announce to these people that their conversations are recorded, then that's fine, they don't need a warrant or anything? That's certainly the kind of notice that you find in other cases where this court and the Supreme Court have said defendants were put on notice, they consented to their use. The government just gave the example of when you're in a jail. Even there, notice is provided above the phones in a prisoner manual. You are consenting to be recorded. You shall be recorded. We didn't have any of that type of official notice in this case to defendants, and indeed, this was the discussion that came up earlier, the agents did hide this, as you noted earlier, with the express purpose of hoping defendants- of calls and what they talk about and so on, but in the van, they've just been arrested. They're not going to be talking to their family members, making phone calls and so on? All of the cases where the courts, this court and the Supreme Court, have upheld an intrusion on defendants' privacy rights, they've looked at the government interests. Do you really think that if two people are talking and they're planning a murder, they have a right to keep that secret unless the government has obtained a warrant? In this case, the government needed to get a warrant or get consent to hear that conversation. In my example, two people planning a murder. Yes. No, that's unacceptable. Yes, if those two people were in the van here under these circumstances here, the government would need to get a warrant because that's required. No, that is not realistic. The Belle v. Woolfish, in what all these cases have done, is balance the interests, the privacy interests of the defendant and the government's interests. In all those cases, it's safety, security, sanitation. The government, importantly here, the ATF has never asserted any of those interests in this case. In fact, the record shows the agents specifically testify. So you think they need a warrant also for their squad cars? The case law is clear. There's no expectation of privacy there. The case law is clear. There's no expectation of privacy in a squad car for the reasons that both district court judges here now have explained. So there's no question about a squad car. Well, Webster tells you that there's, you know. The other thing that Webster says is this decision, Webster, is expressly limited to a squad car. Well, it was at that time because that's what we were dealing with. Well, Webster also knew. You'll remember who wrote the decision. I do, Judge Rovner. You wrote the decision and you said you knew at the time that Chief Judge Castillo had ruled in Williams that a van was different. And he specifically said you didn't take the time, you didn't agree, but you said, hey, we're not talking about a van here. That's a different analysis for a different day. And here we are. Today's the day. Well, we're here. We're here. And our position is that the district court, both in Williams, Chief Judge Castillo and Judge Gettleman, got that decision correct. And I'll note that Judge Castillo's decision in Williams was not something the government thought to object to or had a problem with at the time. That was five months before the decision in this case. And now the government is saying that that foundation on which Judge Gettleman's decision rests is somehow objectionable or wrong. We don't see what's changed. In fact, Judge Gettleman's ruler was grander, less restrictive for the government than Chief Judge Castillo's rule. And Chief Judge Castillo excluded the entire conversation here. And this brings me to the reason for our cross-appeal. We do think Judge Gettleman or the district court erred in ruling that Mr. Webster's subjective expectation of privacy terminated at some point. We think that the district court made an error in looking at Adonis Berry's, co-defendant Adonis Berry's actions and not Mr. Webster's actions. And the case law is uniform. You have to look at the individual's subjective expectation. What did he manifest? Did he show, did Mr. Webster show that he wanted to keep his conversation private? And nothing about what Mr. Webster was doing changed after Adonis Berry speculated, and it was just speculation, that the van might be bugged. Because there was no change, had there been some reaction on Mr. Webster's part, it might be relevant. But because there was no reaction, Mr. Webster did nothing to lose in the district court's term, lose his objective expectation of privacy. I want to address the government ended with the idea that the officers believed in good faith that they could record, wire up this van. The case law, there was no case law in this district. In the other districts, it was just about police cars, not vans. And the Supreme Court has been clear that absent case law in the face of unclear case law, courts need to exclude evidence to properly incentivize officers not to try to get evidence through questionable practices. Officers need to know that if we get this evidence through a questionable practice, it might not be admitted. So exclusion is the appropriate remedy here, particularly where we see the ATF was acting deliberately and repeatedly. They had months of planning, months of meeting. They had to get the recording equipment days in advance. They got warrants after warrants after warrants to record these multiple meetings between the defendants and the CI. So they had the time, they had the knowledge, the training, the experience to get judicial authorization here or to get consent before they did what they did. And this is important because the Supreme Court has said you need a judicial officer between the citizen and the police. Without it, citizens aren't secure. It's up to a police officer's own discretion what a Fourth Amendment violation is. And here we see the ATF introducing this new procedure, trying to skirt around the requirements of the Fourth Amendment in Title III for the pure purpose of getting incriminating evidence. So we ask that you affirm the district court's basic ruling. There was an objective expectation of privacy here. There was a subjective expectation of privacy. But we ask that you reverse in an exercise of pendant appellate jurisdiction, which is available here. This is the perfect case for it. It hasn't been done before. This is the case for it. We ask that you reverse only to the extent that the district court failed to exclude the entire recording. Thank you. Thank you. Ms. Bonamici? Your Honor, on the issue of good faith, this is not a case where the law was unclear, absolutely not. This is a case where every circuit that had decided the issue over a period of 20 years had found that there was no reasonable expectation of privacy in a police car or a police vehicle. And a number of those cases did not deal with cars. They dealt with other police vehicles. Moreover, in reality, what we would be saying is that the officers needed to anticipate that a year after their conduct, two district courts, one of them the district court in this case, would make the distinction that the courts made in Williams and in this case and separate themselves from that line of unbroken precedent. That's just not fair. This is a case where it is easy to see why it makes little sense and why a rule like this would have little deterrent value if the only issue that made the issue unclear for anyone is the fact that this court hadn't gotten to the point of ruling on the issue. That's just not right. In terms of a requirement of a warrant, as Your Honor points out, Judge Rovner, that's not feasible. That is onerous. I mean, it's hard to even imagine how an anticipatory warrant could be obtained in that context. It really makes no sense. And the failure to appeal Judge Castillo's decision in Williams, as Your Honors know, is not a sign of the government's agreement with the decision. The government resisted that and took the contrary view. And there are lots of reasons, most importantly in a case of a suppression issue, the question of the necessity of the evidence is the question that is most important in the decision to appeal a suppression issue. So it's obvious that that is not in agreement with it. With respect to the argument that the Court has held that the Fourth Amendment does apply in prisons, yes, of course it has. And the Supreme Court and the courts have held that the defendant should be given the rights that are not inconsistent with the needs of a prison. But the courts have consistently and repeatedly held that there is no Fourth Amendment right in a jail cell. And that's the distinction, that in that context there's just no way to afford that right consistently with the needs of law enforcement. And here, it has never been, there's no precedent for saying that there are Fourth Amendment rights in the jail cell. And there's no public interest in allowing defendants, criminal defendants who are transported together to have private conversations in a police vehicle when they may be speaking about criminal conduct, including, as Your Honor, Judge Posner points out as a possibility, a plan to murder witnesses as part of an effort to obstruct justice. I'm not saying that that happened here, I don't mean to suggest that, but I am saying that that is one of the things, one of the reasons why the interest of the government in surreptitiously recording these conversations far outweighs any possible interest the defendants have in this context. For these reasons, the government respectfully requests that the district court's judgment be reversed and the case be remanded. Thank you very much. Okay, thank you very much to both counsels. The court is going to take a ten-minute recess before our last court. Thank you.